******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

ERNEST FRANCIS *v.* BOARD OF PARDONS
AND PAROLES ET AL.
(SC 20377)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Vertefeuille, Js.

*Syllabus*

Pursuant to statute (§ 54-125g), "any person who has six months or less to
the expiration of the maximum term or terms for which such person
was sentenced" is eligible "to go at large on parole . . . after having
served ninety-five per cent of the definite sentence imposed."

The plaintiff, who had been convicted of murder and sentenced to fifty
years' imprisonment in 1992, sought a judgment declaring, inter alia,
that § 54-125g applies to prisoners, like himself, who have been convicted
of murder and that the defendants, the Board of Pardons and Paroles
and the Commissioner of Correction, must consider his eligibility for
early parole in calculating his estimated date of release from prison.
The commissioner projected that, after applying certain statutory (§§ 18-
7a and 18-98a) credits that the plaintiff had earned toward the reduction
of his sentence, the plaintiff's maximum release date would be in 2027.
The defendants argued that the plaintiff's action was not ripe because
the term "definite sentence," as used in § 54-125g, refers to the full
sentence imposed by the trial court, not the sentence an inmate will
actually serve, and because, after applying the statutory credits that he
has earned and will continue to earn, the plaintiff had not yet served,
and almost certainly never would serve, 95 percent of his fifty year
sentence. The defendants further argued that, even if the term "definite
sentence" refers to an inmate's sentence as reduced by the credits he
has earned, the plaintiff's action still was not ripe because he would
not serve 95 percent of his sentence, as reduced by the credits he has
earned, until 2024. The trial court assumed that § 54-125g applied to the
plaintiff and that the term "definite sentence" means the sentence an
inmate will actually serve. Nevertheless, the trial court concluded, in
light of its assumptions, that the plaintiff's action was not ripe because
he would not be eligible for parole until 2024, at the very earliest, and,
thus, rendered judgment dismissing the action. The plaintiff appealed
to the Appellate Court, which dismissed the appeal. On the granting of
certification, the plaintiff appealed to this court. *Held* that the judgment
of the Appellate Court was affirmed on the ground that, even if this
court were to assume that § 54-125g applies to inmates, like the plaintiff,
who have been convicted of murder, the plaintiff's claims were nonjusti-
ciable for lack of standing: upon reviewing the statutory history of the
determinate sentencing scheme, this court concluded that the legislature
intended the term "definite sentence," as used in § 54-125g, to mean the
full sentence imposed by the sentencing court, and, because the plaintiff
would not serve 95 percent of his fifty year definite sentence until 2039,
which was well after his maximum release date in 2027, the plaintiff's
claims were contingent on an event that would never occur; accordingly,
because the plaintiff would, with virtual certainty, never serve 95 percent
of his definite sentence, his interest in whether § 54-125g applies to
inmates who have been convicted of murder was purely theoretical,
and, accordingly, he lacked standing to bring the present action.

Argued November 16, 2020—officially released March 16, 2021*

*Procedural History*

Action for a judgment declaring, inter alia, that a
statute regarding the parole of prisoners nearing the
end of a maximum sentence is applicable to the plaintiff,
brought to the Superior Court in the judicial district
of New Haven, where the court, *Abrams, J.*, rendered
judgment dismissing the action; thereafter, the plaintiff
appealed to the Appellate Court, *DiPentima, C. J.*, and

*Keller* and *Olear, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Ernest Francis*, self-represented, the appellant (plaintiff).

*James M. Belforti*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare E. Kindall*, solicitor general, for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Ernest Francis, an inmate in a Connecticut correctional facility, brought this declaratory judgment action, proceeding pro se, against the defendants, the Board of Pardons and Paroles (board) and the Commissioner of Correction (commissioner). The plaintiff sought a judgment declaring that General Statutes § 54-125g[1] applies to him, that the commissioner must factor his eligibility for early release under § 54-125g into his "time sheet,"[2] and that the commissioner must "schedule dates to determine [his] suitability for release." Thereafter, the trial court, sua sponte, ordered the parties to file briefs addressing the issue of whether the plaintiff's claims were ripe for review given that, even if § 54-125g applied to the plaintiff, he would not be eligible for parole under the statute for several years. After a hearing on that issue, the trial court concluded that the plaintiff's claims were not ripe and dismissed the action for lack of subject matter jurisdiction. The plaintiff appealed to the Appellate Court, which affirmed the judgment in a memorandum decision. *Francis* v. *Board of Pardons & Paroles*, 189 Conn. App. 906, 204 A.3d 1263 (2019). This court granted the plaintiff's petition for certification on the following issue: "Did the Appellate Court properly uphold the trial court's dismissal of the plaintiff's declaratory judgment action as not ripe?" *Francis* v. *Board of Pardons & Paroles*, 333 Conn. 907, 215 A.3d 731 (2019). We affirm the judgment of the Appellate Court.

The record reveals the following facts, which the trial court reasonably could have found or are undisputed, and procedural history. In 1992, the plaintiff was convicted of murder and sentenced to fifty years imprisonment. The plaintiff has been incarcerated since August 30, 1990, and contends that, after applying the sentence reductions that he has earned and will continue to earn pursuant to General Statutes §§ 18-7a[3] and 18-98a,[4] his estimated release date is approximately August 18, 2025. According to the commissioner, the plaintiff's maximum release date after applying the sentence reductions that the plaintiff had already earned as of March 16, 2020,[5] was October 4, 2027.

In 2013, the plaintiff, proceeding pro se, brought this declaratory judgment action against the defendants, alleging that he will be eligible for early release after serving 95 percent of his sentence pursuant to § 54-125g and that the defendants had failed to include his eligibility for early release in calculating his estimated release date. The plaintiff sought a judgment declaring that § 54-125g is applicable to him, that the commissioner must factor his eligibility for early release under § 54-125g into his time sheet, and that the commissioner "should schedule dates to determine [his] suitability for release." Thereafter, the trial court, sua sponte, ordered the parties to file briefs on the issue of whether the

plaintiff's claims were ripe. In his brief, the plaintiff contended that the trial court should construe the term "definite sentence," as used in § 54-125g, to mean the sentence that an inmate will actually serve and not the full amount of the sentence imposed by the sentencing court because, otherwise, he would never serve 95 percent of his sentence. The plaintiff also contended that his eligibility for various rehabilitative programs that are offered in prison is dependent on his eligibility for parole under § 54-125g. He further contended that the board's website indicated that persons convicted of murder are not eligible for parole, and he attached a copy of the website page to his brief.

The defendants argued in their brief on the ripeness issue that the plaintiff's claims were not ripe because the term "definite sentence" means the full amount of the sentence imposed by the trial court, not the sentence that an inmate will actually serve after the application of the various statutory credits. The defendants contended that, because the plaintiff had not served and, indeed, would almost certainly never serve, 95 percent of his fifty year sentence, the plaintiff's claim that he was eligible for parole under § 54-125g was not ripe. The defendants further contended that, even if the plaintiff were correct that "definite sentence" means the length of the sentence after the application of the various statutory credits, his claim still would not be ripe because he would not have served 95 percent of that sentence until approximately January, 2024.

At the hearing on the ripeness issue, the plaintiff again referred the trial court to the board's website, indicating that prisoners convicted of murder are not eligible for parole. The plaintiff contended that, because, according to him, parole eligibility is a prerequisite for eligibility for rehabilitative programs, he would be effectively ineligible for such programs if § 54-125g did not apply to him.

In its memorandum of decision, which was dated December 28, 2017, the trial court concluded that, "even under the rosiest possible scenario, the plaintiff would not be eligible for parole until 2024." Accordingly, the court concluded that, although, "with the passage of time, the issue raised by the plaintiff may indeed become ripe for adjudication, it is not ripe at present, at least six years prior to the earliest possible triggering event." Thus, the court appears to have assumed, without deciding, that the plaintiff was correct that the term "definite sentence," as used in § 54-125g, means the sentence that a convicted defendant will actually serve. The court dismissed the plaintiff's complaint without prejudice to his reassertion of the claims in a future action filed on or after January 1, 2022.

The plaintiff then appealed to the Appellate Court. The sole claim that the plaintiff made in his brief to that court was that the trial court had applied an improper

standard when it determined that his claims were not ripe. Specifically, the plaintiff pointed out that, in its memorandum of decision, the trial court had stated that, "[i]n reviewing this matter prior to trial, the court recognized the possibility that the matter was not currently ripe for adjudication . . . ." The plaintiff contended that the mere possibility that the matter was not ripe was not sufficient to deprive the trial court of jurisdiction. The defendants again claimed as an alternative ground for affirmance—without expressly denominating the claim as such—that the term "definite sentence" means the full sentence that is imposed by the sentencing court, not the sentence that a defendant actually serves. Because the plaintiff would never serve 95 percent of his fifty year sentence, the defendants argued, his claim was not ripe. The Appellate Court summarily affirmed the judgment of the trial court in a memorandum decision. *Francis* v. *Board of Pardons & Paroles*, supra, 189 Conn. App. 906.

This certified appeal followed. The plaintiff contends on appeal that his claims are justiciable because, if this court determines that § 54-125g applies to him, the board can provide him with a "parole date," and he will then be eligible for rehabilitation programs.[6] Although his brief to this court does not expressly raise the issue, it is implicit in this claim that, as the defendant claimed below, the term "definite sentence," as used in the statute, means the sentence that the trial court imposed less any accrued statutory credits. The defendants again contend, essentially as an alternative ground for affirmance, that the plaintiff's claim is not ripe because "definite sentence," as used in § 54-125g, means the sentence that the trial court imposed, not the sentence as reduced by the various statutory credits. They argue that, even if § 54-125g applies to inmates, like the plaintiff, who have been convicted of murder, because it is virtually certain that the plaintiff will never serve 95 percent of his fifty year sentence, he will never become eligible for parole under the statute.[7] Accordingly, they argue that the plaintiff's claim is not ripe because it is contingent on an event that will not occur.

We agree with the defendants that the plaintiff's claim is nonjusticiable because the term "definite sentence" means the full amount of the sentence that the trial court imposed. Although we ordinarily would not address an alternative ground for affirmance without first determining that the ruling that the appellant has challenged on appeal was incorrect, we do so in the present case because it is clear to us, for the reasons discussed subsequently in this opinion, that the term "definite sentence," as used in § 54-125g, means the full amount of the sentence imposed by the trial court. Accordingly, it is clear that the plaintiff's claims are nonjusticiable because they are contingent on an event that will *never* occur, namely, his serving 95 percent of his definite sentence of fifty years imprisonment.[8] It is

a closer and more difficult question whether the trial court properly determined that the plaintiff's claim is not ripe because it is contingent on an event that will transpire with virtual certainty—namely, the defendant's serving 95 percent of his sentence as reduced by the various statutory credits—but not in the near future.[9] Cf. *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86–87, 952 A.2d 1 (2008) ("in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not *and indeed may never transpire*" (emphasis added; internal quotation marks omitted)). Indeed, at oral argument before this court, counsel for the defendants conceded that he was not sure whether the plaintiff's claim would be unripe if his sentence had not been reduced by the accrual statutory credits and he were required to serve the entire fifty year sentence. A fortiori, it is less than clear that the trial court correctly determined the plaintiff's claim is not ripe even on the assumption that the plaintiff's interpretation of the term "definite sentence" is correct and he will be eligible for parole under § 54-125g in 2024.

Accordingly, we turn to the defendants' claim that the term "definite sentence," as used in § 54-125g, means the full amount of the sentence imposed by the trial court. We begin our analysis with the standard of review. The proper interpretation of § 54-125g is a question of statutory interpretation to which we apply well established rules of construction and over which we exercise plenary review. See General Statutes § 1-2z (plain meaning rule); *Canty* v. *Otto*, 304 Conn. 546, 557–58, 41 A.3d 280 (2012) (general rules of construction aimed at ascertaining legislative intent).

The Appellate Court considered an issue very similar to the one before us in *State* v. *Adam H.*, 54 Conn. App. 387, 735 A.2d 839, cert. denied, 251 Conn. 905, 738 A.2d 1091 (1999). The defendant in *Adam H.* was sentenced to "nine years imprisonment, execution suspended after three years, with five years of probation. On June 17, 1997, the defendant filed a motion for modification of his sentence pursuant to [General Statutes] § 53a-39.[10] The state's attorney did not agree to seek review of the defendant's sentence. Because the trial court determined that under § 53a-39 the defendant's sentence was a definite sentence of more than three years, it concluded that without the agreement of the state's attorney it lacked jurisdiction to modify the sentence and denied the motion." (Footnote added; internal quotation marks omitted.) Id., 389. On appeal, the defendant claimed that the trial court had the authority to modify his sentence because "the definite sentence referred to in § 53a-39 [was] comprised solely of the executed portion of his sentence," which was three years. Id.

The Appellate Court rejected this claim. The court

observed that, "[p]rior to 1981, defendants were subjected to an indeterminate sentencing scheme. See General Statutes § 53a-35.[11] The indeterminate sentencing scheme used . . . allowed the court to set both the minimum and maximum portion of the sentence . . . parole eligibility [was] established at the minimum less any good time used to reduce that minimum term. . . . The minimum and maximum portions of the sentence [were] a fixed number of years except for a class A felony where the maximum [was] life imprisonment, unless for a capital felony where a sentence of death [could] be imposed. . . . This scheme was subsequently abolished and replaced by the current scheme of definite sentencing applicable to crimes committed on or after July 1, 1981. See General Statutes § 53a-35a.[12] Under this system, sentencing courts impose a flat or exact term of years of imprisonment without a minimum or maximum; that term could be reduced by various statutory credits. . . . The legislature's purpose, therefore, in using the label definite sentence is to differentiate the type of sentence it denotes from the historical, indeterminate sentence, and not to indicate any definite amount of time that a defendant will be incarcerated. Furthermore, because of the availability of statutory credits as well as the operation of probation, the precise time that a defendant will serve in prison cannot be predicted with exact certainty. Accordingly, the most logical interpretation of definite sentence is the flat maximum to which a defendant is sentenced, in [*Adam H.*], nine years." (Citations omitted; footnotes added; internal quotation marks omitted.) *State* v. *Adam H.*, supra, 54 Conn App. 393.

We find this analysis persuasive. "[I]n the absence of persuasive evidence to the contrary, we may presume that [words] used in different parts of the same statutory scheme [have] the same meaning." *State* v. *Rivera*, 250 Conn. 188, 201, 736 A.2d 790 (1999). Although §§ 54-125g and 53a-39 are not contained in the same title of the General Statutes, their subject matter is clearly related. We conclude, therefore, that the term "definite sentence," as used in § 54-125g, means the full sentence imposed by the sentencing court, and not the sentence as reduced by various statutory credits. Thus, in the present case, the plaintiff's "definite sentence" is the sentence of fifty years imprisonment imposed by the trial court. The plaintiff would serve 95 percent of that sentence in approximately October, 2039. Because the plaintiff's maximum release date is 2027, it is clear that he will never serve 95 percent of his definite sentence and will never become eligible for parole under § 54-125g, even if we were to assume that the statute applies to persons convicted of murder.[13]

Having reached this conclusion, we address the question of whether the Appellate Court properly upheld the trial court's ruling that the plaintiff's claims are not ripe. We begin with the standard of review. "[J]usticia-

bility comprises several related doctrines, namely, standing, *ripeness*, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter. . . . A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . [B]ecause an issue regarding justiciability raises a question of law, our appellate review [of a ripeness claim] is plenary. . . .

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, supra, 288 Conn. 86–87.

Although the parties in the present case have framed the issue before us as implicating the ripeness doctrine, it appears to us that that doctrine applies when a claim is contingent on an event that *may* or *may not* occur. See id., 87 (event "*may* never transpire" (emphasis added; internal quotation marks omitted)). In other words, the ripeness doctrine presumes that there is at least a possibility that the plaintiff's claim will become ripe at some future time. When a claim is contingent on an event that, with virtual *certainty*, will *never* occur, it appears to us that the plaintiff's standing to bring the claim is implicated because the plaintiff cannot "demonstrate a specific, personal and legal interest in the subject matter of the [controversy] . . . ." (Internal quotation marks omitted.) *Lazar* v. *Ganim*, 334 Conn. 73, 85, 220 A.3d 18 (2019). In any event, regardless of whether there is some overlap between the doctrines of ripeness and standing or, instead, only the plaintiff's standing is implicated here, we conclude that the plaintiff's claims are nonjusticiable because the event on which the claims are contingent, namely, his serving 95 percent of his definite sentence, will never occur. Accordingly, we conclude that the trial court lacked subject matter jurisdiction on this alternative ground.

The plaintiff contends that, even if he will never become eligible for parole under § 54-125g because he will never serve 95 percent of his definite sentence, his claims are justiciable because he has a specific, personal and legal interest in knowing whether § 54-125g applies to inmates, like him, who have been convicted of murder. We disagree. Although he may have an interest in this question, any such interest is purely theoretical because resolution of the issue will have no practical consequences for him. Accordingly, his interest is not sufficient to create standing to bring this

action for a declaratory judgment.[14] Cf. *In re Ava W.*, 336 Conn. 545, 558, 248 A.3d 675 (2020) ("[a] case is considered moot if [the trial] court cannot grant . . . any practical relief through its disposition of the merits" (internal quotation marks omitted)); see also *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 625, 822 A.2d 196 (2003) ("[a] declaratory judgment action is not . . . a procedural panacea for use on all occasions, but, rather, is limited to solving justiciable controversies" (internal quotation marks omitted)); id., 625–26 (declaratory judgment statute cannot be used "to secure the construction of a statute if the effect of that construction will not affect a plaintiff's personal rights"). Accordingly, we conclude that the Appellate Court properly affirmed the judgment of the trial court dismissing the plaintiff's action.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* March 16, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 54-125g provides: "Notwithstanding the provisions of sections 18-100d, 54-124c and 54-125a, any person who has six months or less to the expiration of the maximum term or terms for which such person was sentenced, may be allowed to go at large on parole pursuant to section 54-125i or following a hearing pursuant to section 54-125a, provided such person agrees (1) to be subject to supervision by personnel of the Department of Correction for a period of one year, and (2) to be retained in the institution from which such person was paroled for a period equal to the unexpired portion of the term of his or her sentence if such person is found to have violated the terms or conditions of his or her parole. Any person subject to the provisions of subdivision (1) or (2) of subsection (b) of section 54-125a shall only be eligible to go at large on parole under this section after having served ninety-five per cent of the definite sentence imposed."

[2] Presumably, the defendant's "time sheet" is the form on which the Department of Correction calculates the time in prison that the defendant must serve after application of all earned statutory credits and considering any statutory parole eligibility.

[3] General Statutes § 18-7a (c) provides in relevant part: "Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. . . ."

Section 18-7a was amended by No. 15-14, § 4, of the 2015 Public Acts, which made technical changes to the statute that are not relevant to this appeal. For purposes of clarity, we refer to the current revision of the statute.

[4] General Statutes § 18-98a provides: "Each person committed to the custody of the Commissioner of Correction who is employed within the institution to which he was sentenced, or outside as provided by section 18-100, for a period of seven consecutive days, except for temporary interruption of such period as excused by the commissioner for valid reasons, may have one day deducted from his sentence for such period, in addition to any other earned time, at the discretion of the Commissioner of Correction."

[5] March 16, 2020, was the date that the defendants filed their brief with this court.

[6] The plaintiff also claims on appeal that the trial court applied an improper standard when it determined that his claim was not ripe. We reject this claim. When the trial court referred to the "possibility" that the matter was not ripe for adjudication, it was simply noting that, *before* the issue was briefed and argued, there was a question about the ripeness of the plaintiff's claims.

[7] The defendants also contend that the plaintiff's claim pertaining to his eligibility for rehabilitation programs is unreviewable because he made no such claim in his complaint. See *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988) ("[t]he motion to dismiss . . . admits all facts [that] are well pleaded, invokes the existing record and must be decided upon that alone" (internal quotation marks omitted)). We conclude that the record is inadequate for review of the plaintiff's claim because he made no representation to the court and presented no evidence on the question of whether he would be eligible for rehabilitation programs if § 54-125g applies to all persons who have been convicted of murder—in which case his claim would likely be justiciable—or, instead, he would be eligible for such programs if he will be eligible for parole in the near future because "definite sentence" means the sentence that he will actually serve after application of the various credits. If the plaintiff is making the latter claim, his eligibility for rehabilitation programs would not somehow convert a claim of parole eligibility that is nonjusticiable because his interpretation of § 54-125g is incorrect into a justiciable claim of eligibility for rehabilitation programs. We note, however, that the board has never denied that persons convicted of murder can become eligible for parole. See footnote 14 of this opinion. If the plaintiff believes that he is eligible for rehabilitation programs as a person who has been convicted of murder, even if he will never actually be eligible for parole because he will never serve 95 percent of his definite sentence, nothing prevents him from requesting that the Department of Correction allow him to participate in such programs on that ground. If the Department of Correction denies that request, the plaintiff can seek whatever legal or administrative relief is available.

[8] See footnote 12 of this opinion.

[9] We acknowledge that it is not metaphysically certain that, if the plaintiff's interpretation of § 54-125g were correct, he would be eligible for parole under the statute in 2024 because it is theoretically possible that he could lose his good time credits. See footnote 13 of this opinion. Indeed, the future is unpredictable, and it is theoretically possible that he would never be eligible for parole for any number of unforeseeable reasons. We need not address the effect of these theoretical possibilities on the plaintiff's claim that his claims are ripe, however, because we conclude that the defendants' interpretation of § 54-125g is correct.

[10] General Statutes § 53a-39 provides in relevant part: "(a) At any time during the period of a definite sentence of three years or less, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced.

"(b) At any time during the period of a definite sentence of more than three years, upon agreement of the defendant and the state's attorney to seek review of the sentence, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced. . . ."

[11] General Statutes § 53a-35 (a) provides: "For any felony committed prior to July 1, 1981, the sentence of imprisonment shall be an indeterminate sentence, except as provided in subsection (d). When such a sentence is imposed the court shall impose a maximum term in accordance with the provisions of subsection (b) and the minimum term shall be as provided in subsection (c) or (d)."

[12] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence . . . ."

[13] In reaching this conclusion, we acknowledge that it is not metaphysically certain that the plaintiff will be released from prison before he serves 95 percent of his fifty year sentence because it is theoretically possible that, as the result of unforeseeable events, he could lose all of the credits against his sentence that he has accrued to date. The risk of this occurrence is so remote, however, that we treat it as nonexistent. Indeed, counsel for the defendants represented at oral argument before this court that the likelihood that the plaintiff would serve 95 percent of his fifty year sentence was negligible. Accordingly, for purposes of this opinion, we assume that the plaintiff will be released on or before his maximum release date of October 24, 2027, and that it is therefore certain that he will not serve 95 percent of his fifty year sentence.

[14] We emphasize that the defendants have never denied that § 54-125g applies to inmates who have been convicted of murder but claim only that the plaintiff's claims are nonjusticiable. At oral argument before this court, counsel for the defendants represented that the board's website indicating that inmates convicted of murder are not eligible for parole refers only to eligibility for parole under General Statutes § 54-125a, although the website does not expressly identify that statute. See Connecticut Board of Pardons and Paroles, Parole Eligibility Information, available at https://portal.ct.gov/BOPP/Parole-Division/Parole-Links/Parole-Eligibility-Info (last visited March 15, 2021). Moreover, the defendants noted in their brief to this court that § 54-125g applies to " '[a]ny person subject to the provisions of subdivision (1) or (2) of subsection (b) of section 54-125a' " and that § 54-125a (b) (1) (E) applies to persons convicted of murder.

---